# Commonwealth v. Haylow.

*Marriage—Proof of marriage—Reputation—Cohabitation—Desertion— Evidence.*

Marriage is a civil contract which may be completed by any words in the present time without regard to form, the essential to its validity being the consent of the parties able to contract.

Although neither cohabitation nor reputation of marriage is marriage, yet when conjoined they are evidence from which a presumption of marriage arises, but this presumption may always be rebutted.

The admissions by the parties of their marriage is in the nature of direct proof, and is competent evidence of the fact. When such admission is made under circumstances that show it to be against interest, it is evi-

dence against the person making it with the same force and effect as any other admission against interest.

In a proceeding by a wife against her alleged husband for nonsupport, it appeared that the parties had cohabited for about four years, and there was evidence of reputation of marriage. The wife testified that on the day " we got married " the defendant brought to her a marriage license, which was produced in court, and said that that was all that was necessary, that it was all right; that when he told her a marriage ceremony was not necessary she believed him; that if she had ever thought she was not his wife, she would not have stayed with him; that she believed in her heart she was married; that he introduced her as his wife; and she was so received by her neighbors; that they lived and kept house together as man and wife, and that after they separated he continued for a time to contribute to her support. The evidence also showed that the defendant wrote to the petitioner a number of letters, addressing the envelopes to her as his wife. He also gave her a paper in which he used this language: " I herewith agree to pay my wife the sum of $25.00 per month as long I live separated from her." The defendant testified that their cohabitation was under an agreement that if they got along harmoniously they would be married, if not they would separate. *Held*, that the evidence was sufficient to sustain a finding that there was in fact a marriage.

*Husband and wife—Desertion—Nonsupport—Findings of fact—Quarter sessions.*

The judgment and findings of fact in a desertion proceeding in the quarter sessions by a judge who sees and hears the witnesses is as conclusive as the verdict of a jury.

Submitted May 7, 1901. Appeal, No. 5, April T., 1901, by defendant, from order of Q. S. Cambria Co., March T., 1900, No. 26, for support in case of Commonwealth v. James H. Haylow. Before RICE, P. J., BEAVER, ORLADY, W. W PORTER and W. D. PORTER, JJ. Affirmed.

Proceedings for support.

BARKER, P. J., filed the following opinion:

Cohabitation and reputation constitute sufficient evidence of marriage in all jurisdictions in this country and in England. The inference or presumption of marriage, however, arising from proof of cohabitation and reputation, may be rebutted. The defendant admits the cohabitation for a period of about four years, but claims that it was meretricious and not marital. He is met here by another presumption, as strong as the one first mentioned, that where cohabitation for a considerable pe-

riod be established it is a lawful cohabitation, and he has rebutted neither presumption. Although the prosecutor and defendant certainly demeaned themselves toward each other as husband and wife, the proof of reputation was circumscribed by the fact that they lived in a large city and that their immediate circle of mutual acquaintances was somewhat limited, yet to the extent of that circle reputation was established.

Whatever doubt one might have as to the sufficiency of the proof to establish the marital relation, and as to whether the defendant's denial that such relationship existed rebuts the presumption arising from proof of cohabitation and reputation, that doubt must be resolved against the defendant because of his own admissions in his acts. He procured a marriage license in the city of Cleveland and gave it to her. Of course, this is invaluable to show a legal celebration, but is evidence, along with the other evidence in the case, to show that their relationship was marital. He signed and gave to her a paper reading as follows: " Cleveland, December 4, '98. I hereby agree to pay my wife, bearer of this note, the sum of $25.00 per month as long as I live separated from her." After he came to Johnstown he wrote her a number of letters addressing the envelopes to "Mrs. Jas. Haylow," and there is nothing in the contents of the letters to overthrow the presumptions arising from the proofs and from his own acts. The effect of similar acts as admissions have been wiped out in other cases by allegations that they were done to protect the reputation of the woman and prevent scandal, but nothing of that kind occurs here.

The question of jurisdiction has been raised but we have no trouble as to that question. The Supreme Court seems to have decided, in Barnes v. Commonwealth, 11 W. N. C. 375, that the act of 1867 gives the court jurisdiction "without reference to where the original desertion may have been." This was held to be the law by Judge PAXSON in the City v. Bailey, 8 Phila. 485, and by Judge JESSUP in Commonwealth v. Wilmarth, 7 Luz. Leg. Reg. 197, in well-considered opinions, delivered, however, prior to the decision in the City v. Bailey. If we were disposed to follow these cases, we could not apply them to this case because of the difference in the facts. In this case the desertion was not consummated, as in those cases, out of the state. The defendant did not announce to the prosecutor when he left

Cleveland that he intended to leave her; at least, it is not so proven. He contributed to her support after he came to Johnstown, and there is nothing in his letters to her to indicate that he did not intend to continue to do so. On the contrary they indicate otherwise. Desertion is not a continuing offense. It is a simple act, and the act of desertion occurred in this county.

Defendant has asked leave to introduce other evidence. We realize the importance of the case sufficiently to reopen it if we could see that the additional evidence proposed could avail the defendant, but we do not see how it can.

And now, March 26, 1900, after full hearing, it is ordered that the defendant, James H. Haylow, pay the costs of these proceedings, and further that he pay to his wife, Marie Haylow, the sum of $25.00 per month, from March 5, 1900, payable monthly on the first of each succeeding month; and that he enter into recognizance, or give bond, with surety or sureties to be approved by the court, in the sum of $500, conditioned that he comply with the sentence of the court and remain in the custody of the sheriff till this part of the sentence be complied with.

*Error assigned* was the order of the court.

*Robert S. Murphey* and *Charles C. Linton,* for appellant.— The essential of a contract of marriage at common law is that the parties contemplate a present and immediate assumption of the marriage status; in other words, it is indispensable to marriage, whether under the statutes or the common law, that the parties consent to be husband and wife presently : Bishop on Marriage and Divorce, secs. 253, 254.

The parties to this proceeding clearly never presently undertook the marriage relation in the manner prescribed by the decisions; their marriage was contingent upon future events, which never came to pass: Com. v. Stump, 53 Pa. 132; Hunt's Appeal, 86 Pa. 294; Appeal of the Reading Fire Insurance & Trust Company, 113 Pa. 204; Grimm's Estate, 131 Pa. 199; Bicking's Appeal, 2 Brewster, 202; Yardley's Estate, 75 Pa. 207; Tholey's Estate, 93 Pa. 36; 14 Am. & Eng. Ency. of Law, title, Marriage, 528.

The mistake of the court is in overlooking the well known and already cited presumption that intercourse in its inception

being illicit, it is presumed to continue until a change in intention is produced: Guardians of the Poor v. Nathans, 2 Brewster, 149; Bicking's App., 2 Brewster, 202.

*M. B. Stephens* and *F. J. O'Connor*, for appellees.—The appellee contends that the only question in this case that can be inquired into by the Superior Court is the regularity of the proceedings in the court below. The appellant is not entitled to a bill of exceptions so as to bring up anything but the record: Chase v. Miller, 41 Pa. 403; Commonwealth v. James, 142 Pa. 32; Commonwealth v. Jones, 90 Pa. 431; Commonwealth v. Tragle, 4 Pa. Superior Ct. 164; Overseers v. Overseers, 2 Pa. Superior Ct. 400.

It can no longer be contended that an appeal will lie from a proceeding in desertion and nonsupport under the Act of March 16, 1868, P. L. 46, so as to review the facts, as such an appeal is in effect a certiorari and under which only the regularity of the proceedings will be inquired into. The finding of a fact by the court below and its order and decree in an action of nonsupport under the act of 1867 is final: Commonwealth v. Hart, 12 Pa. Superior Ct. 609.

OPINION BY RICE, J., July 25, 1901:

The question presented to the court below was whether there was a valid marriage between the prosecutrix and the defendant, it being admitted that there was no ceremony? The decision of the questions of fact by the quarter sessions is as conclusive as the verdict of a jury, and in no view which may be taken of our appellate jurisdiction are we authorized to go further than to ascertain whether there was evidence, which, if believed, would sustain the finding. It may well be questioned whether we are required to go that far in a desertion case, even though an exception was taken to the ruling of the court below and the transcript of the evidence was approved by the presiding judge and directed to be filed. We, however, will not stop to consider that question in this opinion.

Cohabitation for a period of about four years was clearly proved, indeed was not denied. The proof of reputation of marriage is not so clear, but notwithstanding the earnest argument of the appellant's counsel to the contrary, we think there

was sufficient evidence of the fact to warrant this conclusion of the presiding judge, namely: "Although the prosecutrix and defendant certainly demeaned themselves toward each other as husband and wife, the proof of reputation was circumscribed by the fact that they lived in a large city and their immediate circle of mutual acquaintances was somewhat limited, yet to the extent of that circle reputation was established." See further as to proof of reputation, Hines's Estate, 10 Pa. Superior Ct. 124, and the remarks of Judge ASHMAN in Comly's Estate, 185 Pa. 208. But neither cohabitation nor reputation of marriage is marriage. When conjoined they are evidence from which a presumption of marriage arises, but the presumption arising from such facts may always be rebutted, and wholly disappears in the face of proof that no marriage in fact had taken place: Yardley's Estate, 75 Pa. 207; Hunt's Appeal, 86 Pa. 294; Appeal of Reading Fire Ins. & Trust Co., 113 Pa. 204; Grimm's Estate, 131 Pa. 199. Nor is cohabitation under an agreement to marry on a future day marriage: Grimm's Estate, supra. If, therefore, as the defendant testified, their cohabitation was under an agreement that if they got along harmoniously they would be married, if not they would separate, it is scarcely necessary to say that this was not marriage. But the prosecutrix gave an entirely different version of the circumstances under which they cohabited, and if she is to be believed the rule recognized in Hunt's Appeal, 86 Pa. 294, and that class of cases does not necessarily apply. She testified that on the day "we got married," evidently meaning on the day their ostensible relation as husband and wife began, the defendant brought to her a marriage license, which was produced in court, and said that that was all that was necessary, that it was all right; that when he told her a marriage ceremony was not necessary she believed him; that if she had ever thought she was not his wife, she would not have stayed with him; that she believed in her heart she was married; that he introduced her as his wife, and she was so received by her neighbors; that they lived and kept house together as man and wife, and that after he came to Pennsylvania he continued for a time to contribute to her support. Moreover, he wrote her a number of letters, addressing the envelopes to Mrs. James Haylow. They have not been presented for our inspection, but the presiding

judge says in his opinion, and this is not controverted, that " there is nothing in the contents of the letters to overthrow the presumptions arising from the proofs and his acts." He also signed and gave to her a paper reading as follows : " Cleveland, December 11, '98. . I herewith agree to pay my wife, bearer of this note, the sum of $25 per month as long as I live separated from her." These acts and declarations of the defendant tend, not only to corroborate the plaintiff, but also to show that he regarded the relation into which they entered as marital, not meretricious. That the admissions of a defendant, whether in express words or clearly to be implied from his acts, are competent, even though not conclusive, evidence of the fact of marriage, we suppose will not be questioned. / " The admissions by the parties of their marriage is in the nature of direct proof, and is certainly competent evidence of the fact. When such admission is made under circumstances that show it to be against interest, it is evidence against the person making it with the same force and effect as any other admission against interest: Greenawalt v. McEnelley, 85 Pa. 352. See also Forney v. Hallacher, 8 S. & R. 161, Commonwealth v. Murtagh, 1 Ash. 272, Vincent's Appeal, 60 Pa. 228, Drinkhouse's Est., 151 Pa. 294, 300, and Strauss's Est., 168 Pa. 561. Under some circumstances such evidence would be very weak, but this affords no reason why it should not be heard for what it is worth ; nor is it for us to declare that in the present case it was worth little. The weight to be attached to it was for the trial court to determine, as it would have been for the jury if there had been a jury trial.

It is true that the parties did not use the formal words of the marriage ceremony, nor was it necessary that they should do so, if each so understood the relation into which they were about to enter, and their words, fairly interpreted, show that they then and there mutually consented to it. With us marriage is a civil contract, which may " be completed by any words in the present time without regard to form " (Hantz v. Sealy, 6 Bin. 405), the essential to its validity being the consent of parties able to contract: Richard v. Brehm, 73 Pa. 140, and cases there cited. See also Comly's Est., 185 Pa. 208, and Drinkhouse's Est., supra. " Society rests upon marriage, the law favors it," and in a country where it is often unattended by cere-

548        COMMONWEALTH *v.* HAYLOW.

Opinion of the Court—Dissenting Opinion. [17 Pa. Superior Ct.

mony, or even officiating witnesses, it is not the duty of the courts to seek for an interpretation of the words used by the parties which would be inconsistent with an honorable intention as well as with their subsequent conduct and declarations, when an interpretation consistent with the formation of an honorable relation is possible, and, in the light of all the circumstance, more probably expresses their intention. Without further elaboration, we conclude that the testimony of the prosecutrix, if believed, taken in connection with the proved acts and declarations of the defendant, and the evidence of cohabitation and reputation, was sufficient to sustain a finding that at the beginning of their ostensible relation as husband and wife, the prosecutrix took the defendant to be her husband and he took her to be his wife. The court, therefore, was warranted in finding that there was a marriage. The judgment in a desertion proceeding of a judge who sees and hears the witnesses is entitled to as great respect as the verdict of a jury. In an appeal from the orphans' court involving the question of the fact of marriage, Judge BEAVER, speaking for this court, said: " The rule therefore of Sheehan's Estate, 139 Pa. 168; of Drinkhouse's Estate, 151 Pa. 294, of Strauss's Estate, 168 Pa. 561, admitting and giving full weight to what is said in regard to it in Kittel's Estate, 156 Pa. 445, should be applied in this case, and the finding of the adjudicating judge should be sustained, largely for the reason that he had the best opportunity for reaching a satisfactory conclusion as to the facts involved:" Luce's Estate, 3 Pa. Superior Ct. 289. The same rule and for the same reasons as well as for others peculiar to the proceeding, should apply here. This disposes of the first four assignments of error. As to the remaining assignments we can add nothing profitably to what has been said by the learned president judge of the quarter sessions.

The order or decree is affirmed, and the record is remitted to the court below, to the end that the same be fully carried into effect.

WILLIAM W. PORTER, J., dissenting:

The importance of the principle involved in an affirmance of this judgment leads me to dissent. I see the technical difficulty in reviewing the order, but the learned judge of the court below

has, as introductory to and explanatory of his order, set forth and filed his reasons. Furthermore, the fact of the marriage alleged is jurisdictional.

I would state the question involved as, not whether there was a valid marriage, but whether there was proof of marriage. The court below has found the fact of marriage between the prosecutrix and the defendant. There is not one word of proof that the parties, at any time, went through even the mere form of a marriage ceremony. The prosecutrix does not allege that words in present, or even in futuro, were used. By her testimony she attempted to prove the allegation of marriage wholly by proof of cohabitation and reputation. She uttered no syllable indicating that a marriage was ever entered into, although speaking of her relation with the defendant as a married relation. When she was cross-examined this crucial question was asked: "You don't pretend to say you were legally married?" To which reply was made: "We never went through a legal ceremony." She admits that she solicited the defendant to procure a marriage license, thus showing her knowledge that some legal forms were necessary. Thus stands the proof of the fact of marriage. The testimony of the prosecutrix containing the admission that there was no marriage ought to have determined the case against her. Proof of cohabitation and reputation is not proof of marriage, but proof from which a marriage may be inferred. Its use is most frequent in cases involving the devolution of property, and particularly in cases where the parties are dead. When the alleged wife is living and the alleged husband is living, and the former admits that no marriage ceremony was performed, and the latter denies the marriage, no effect should be given to proof which furnishes merely the basis for a presumption. It is hinted in the evidence that the defendant has married. It may be that he has children. The effect of the order of the court below is a judicial finding that he was married to the present prosecutrix. I am not willing to assent to a decree, which may in this case (or in others based upon it as a precedent), have the effect of making a man a bigamist, or rendering an honest wife husbandless, or possibly of bastardizing issue, on testimony such as here appears.

W. D. PORTER, J., concurs in this opinion.