Commonwealth ex rel. Allison *v.* Allison, Appellant.

Argued October 9, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*William T. Connor*, with him *John R. K. Scott* and *Therman P. Britt*, for appellant.

*Ernest Scott*, with him *James A. Moore*, *Stanley B. Cooper*, and *Pepper, Bodine, Stokes & Schoch* and *Frederick B. Smillie*, District Attorney, for appellee.

OPINION BY KENWORTHEY, J., January 28, 1943:

This is a prosecution under Section 733 of the Act of June 24, 1939, P. L. 872, 18 PS 4733, charging that defendant separated himself from his wife without reasonable cause and neglected to support her. The court found him guilty and made an order that he pay $60 a month.

It is conceded that relatrix is not defendant's wife. Throughout the period of approximately four years during which the parties lived together he was legally married to another woman, and the Mexican divorce which he procured in April 1937, after they had been living together for some months, and the subsequent marriage ceremonies, were nullities.[1]

The circumstances are these. Relatrix and defendant met in the summer of 1936 at defendant's home in Maine. Relatrix was there as a guest of defendant and his wife. A short time thereafter the husband and wife visited relatrix at her home in Bangor. Relatrix and defendant soon thereafter began an adulterous relationship which continued until they finally separated in October 1941.

Shortly after the inception of this relationship, defendant proposed marriage. Knowing that he was already married, they together consulted a lawyer in Maine who recommended the Mexican divorce after defendant had previously been advised he could not get a divorce in Maine. They later consulted a lawyer in

---

[1] This would be true even under the recent decision of the Supreme Court of the United States in *Williams & Hendricks v. The State of North Carolina* 63 S. Ct. 207 because neither party to the divorce proceeding was ever domiciled in Mexico and although defendant appeared personally in Mexico during a part of one day and long enough to obtain the decree, the divorce was of no greater effect than the so-called "mail-order divorces." And, in addition, the full faith and credit clause of the federal constitution would have no application to a Mexican decree. *Hilton v. Guyot,* 159 U. S. 113, 182, 40 L. Ed. 95.

El Paso, Texas, and instituted, through him or under his guidance, the Mexican action. A decree was entered in June 1937. Two days later relatrix and defendant went through a marriage ceremony in Juarez, Mexico, and about a week later a second one in Phoenix, Arizona.

The applicable section of the Penal Code provides: "If any *husband* ...... separates himself from his *wife* ...... without reasonable cause or neglects to maintain his *wife* ......" (italics added) he may be arrested on information and the court may order him to pay such sum as it shall think reasonable and proper for the comfortable support and maintenance of the said wife.

This court has frequently held that the mere fact that a man and woman live together, even though for a long period of years, will not sustain an order for support under the Act in the absence of a legal marriage. *Com. v. McDermott,* 75 Pa. Superior Ct. 408; *Com. v. Phillips,* 83 Pa. Superior Ct. 213; *Com. ex rel. Knode v. Knode,* 145 Pa. Superior Ct. 1, 20 A. (2d) 896. But the court below took the position that defendant was estopped from raising the question of the validity of the Mexican divorce, applying the familiar principle that one who invokes the jurisdiction of a court cannot thereafter be heard to question it, *Bell v. Bell,* 287 Pa. 269, 135 A. 219; that as to him the Mexican divorce must be regarded valid because he was the party who procured it. Relatrix, in her brief, contends that, by taking the position that she is not his wife, defendant, in effect, admits that "he was guilty of fraud on a Mexican court and that he should not be allowed to benefit as a result of his wrong-doing and to escape the obligation which he voluntarily assumed when he married [relatrix] after he obtained a divorce which she thought was valid." But there is nothing in the record to indicate that he did not also think the Mexican divorce was valid. He cer-

tainly perpetrated no fraud on *her*. She knew he was married to another woman and would have to procure a valid divorce before they could enter into a legal marriage; she, as well as he, knew the validity of their marriage would depend upon the validity of the Mexican divorce. And although she was, of course, not a party to the divorce proceedings she was his partner throughout; they jointly assumed whatever risks were involved.

Much point has been made of the unfairness of permitting defendant to escape what some might well regard as an obligation to support the woman with whom he had lived for a number of years, ostensibly as husband and wife, and whom he subsequently cast off. As we view it, the fairness or unfairness of defendant's conduct is not an issue. Defendant has been charged under the criminal provisions of an Act of Legislature which provides that "if any *husband* ...... separates himself from his *wife*" without reasonable cause, etc. As in all other criminal proceedings, the burden is on the Commonwealth to prove facts which bring the case within the statutory provision. And if the provisions of the statute are not broad enough to punish a man who has been "unfair" to a woman *not* his wife, the remedy is with the law-making body.

*Krause v. Krause,* 282 N. Y. 355, 26 N. E. (2d) 290, relied on by the court below and heavily leaned upon by relatrix here, is, to say the least, doubtful authority outside that state even if it were not, as we think it is, distinguishable on its facts. But four of the seven judges concurred in the majority opinion and a vigorous and persuasive dissenting opinion casts considerable doubt upon it.

We do not mean to repudiate the general doctrine that the validity of a divorce decree cannot be questioned by the spouse who obtains it. Restatement, Conflict of Laws, §112. We limit ourselves to a holding that in a proceeding under Section 733 of the Penal

Code it may be questioned by the husband who procures the invalid decree, particularly where the relatrix participated in the procurement to the extent here shown.

The order is reversed and defendant discharged.