## Commonwealth v. Kissinger.

*Husband and wife—Order for support—Divorce—Appeal from decree for divorce—Order for support not suspended.*

Where a husband, against whom an order for support has been entered, subsequently obtains a decree in divorce, from which decree the wife takes an appeal, said appeal operating as a *supersedeas*, the order for support is not suspended pending the appeal.

Petition for continuance of payments under order for support. Q. S. Lackawanna Co., Oct. T., 1921, No. 779.

*L. D. Savige*, for petitioner; *Ralph W. Rymer*, contra.

MAXEY, J., June 1, 1923.—This case comes before us upon the petition of Ina W. Kissinger, which sets forth, *inter alia:*

"That on Dec. 23, 1922, after hearing, this court ordered her then husband, Raymond Kissinger, the defendant in this case, to pay her $75 per month, to be computed from Dec. 15, 1922, and that this was a modification of an earlier non-support order made by the court on Oct. 8, 1921; all of which appears of record in Quarter Sessions Docket No. 76, at pages 16 and 431.

"That on Sept. 19, 1921, Raymond Kissinger filed his petition in divorce against Ina W. Kissinger, the petitioner.

"That on Jan. 20, 1923, the Court of Common Pleas of Lackawanna County granted a divorce to the said Raymond Kissinger.

"That on March 2, 1923, an appeal from said decree in divorce was taken to the Superior Court and duly perfected, said appeal being indexed to No. 2, February Term, 1924, of the Superior Court, returnable the first Monday of March Term, 1924, and that on said date, to wit, March 2, 1923, the bond was approved and filed."

The petitioner asks the court to make an order directing the said Raymond Kissinger, the defendant above named, to continue payments under the order made by the court on Dec. 23, 1922, and to furnish security for compliance therewith.

The answer of the respondent, Raymond Kissinger, is practically a demurrer to the petition, said answer averring, *inter alia:* "That when a divorce was granted by the Court of Common Pleas of Lackawanna County, this finally adjusted all matters at issue between the parties, and the court has no authority at this time to make any order based on the former order of Dec. 23, 1922."

### Question involved.

The question before us is: Does a decree in divorce, duly appealed from, said appeal operating as a *supersedeas*, prevent the Court of Quarter Sessions from enforcing an order made before the decree in divorce upon the respondent, who was the libellant in the divorce proceedings, compelling him to support his wife?

### Discussion.

If Raymond Kissinger is still the husband of Ina W. Kissinger, the order of the Court of Quarter Sessions is still in force. The order was predicated upon the fact that Raymond Kissinger and Ina W. Kissinger were husband and wife, and that he had deserted her, that is, his said wife, without reasonable cause, and had neglected to maintain her. These desertion and non-support proceedings were under the Act of April 13, 1867, P. L. 78.

This leads us to the question: What is the effect of a decree in divorce duly appealed from?

From the records of the appeal, it appears to us that the bond which accompanied the appeal was entered as required by section 8 of the Act of June 24, 1895, P. L. 212, and that, therefore, "the appeal is perfected and it shall be a *supersedeas*" (section 8 aforesaid). A *supersedeas* is defined by Bouvier's Law Dictionary, vol. 2, page 1070, as follows: "*Supersedeas* (Latin), to set aside. In practice, the name of a writ containing a command to stop proceedings at law. In modern times, the term is often used synonymously with a stay of proceedings, and is employed to designate the effect of an act or proceeding which in itself suspends the enforcement of a judgment: 98 Calif. 306."

We think it follows that when in this case an appeal was taken, which appeal operates as a *supersedeas*, the judgment or decree in divorce against Ina W. Kissinger was suspended, and that, therefore, the parties still remain, in law, husband and wife. Literally speaking, "*supersedeas*" means a setting aside of the thing superseded; in this case that would be the decree in divorce. Or if it is not technically set aside, it is at least suspended, that is, prevented from going into effect, until the matter is disposed of by the appellate court. To regard it otherwise would be treating the appeal as virtually a nullity, so far as it affected the legal relationship of the parties, and either party would be free to marry again, even though the decree in divorce is suspended. While we know of no Pennsylvania case on this point, we think no lawyer would advise his client to incur the risk of a charge of bigamy by contracting a second marriage while the appeal from a decree in divorce was pending; yet, if the logic of the counsel for the respondent, Raymond Kissinger, in this case is correct, either Kissinger or his wife would be free to marry at the present time. If they are not free to marry, they are not divorced; if they are not divorced, they are husband and wife; if they are husband and wife, the order of the Court of Quarter Sessions upon Raymond Kissinger, the husband, for the support of his wife, Ina W. Kissinger, is still in full force and effect.

Counsel for the respondent apparently relies upon the case of Heilbron *v.* Heilbron, 158 Pa. 297, quoting from the opinion of Chief Justice Mitchell, at page 301: "The existence of an order of the Quarter Sessions requiring the libellant to pay $6 a week for the support of his wife did not prevent the Court of Common Pleas from decreeing alimony *pendente lite*. On the contrary, the superior or rather the more general jurisdiction on this case is in the divorce court. It may decree such sum as the circumstances call for, to be commensurate with the position and financial ability of the parties. The Quarter Sessions, on the other hand, is limited to the prevention of the wife becoming a charge on the public. Both orders may run concurrently during the pendency of the proceedings, but when the Common Pleas has awarded a divorce, with or without alimony, the jurisdiction of the Quarter Sessions will be at an end."

Respondent's reliance is apparently upon the last sentence of the above quotation. We, however, view the opinion of Chief Justice Mitchell in a different light. When he spoke of the Common Pleas awarding a divorce, he apparently meant a final decree in divorce unappealed from. He was not then discussing the effect of a decree in divorce which had been appealed from and which had been duly superseded by the perfection of the appeal. We do not interpret Chief Justice Mitchell's opinion as holding that on the very day when the Common Pleas has awarded a divorce the entire proceeding is at an end. It is at an end only when both parties accept the decree as

4 D. & C.

final; it is not at an end when the losing party perfects an appeal. We believe that the statement of Chief Justice Mitchell to the effect that "both orders may run concurrently during the pendency of the proceedings" upholds the position taken by the petitioner in the case at bar. Under our view of the law, the proceedings are still pending because an appeal has been taken. This being so, the order of the Court of Quarter Sessions may run concurrently with any order made in the premises by the Court of Common Pleas. In the case which Chief Justice Mitchell was discussing the Common Pleas Court made an order for alimony *pendente lite*. It was held in that case that the order for alimony *pendente lite* did not interfere with the order of the Court of Quarter Sessions for support. We regard the divorce case of Kissinger v. Kissinger as still pending, which it clearly is, owing to the appeal taken. It follows that the jurisdiction of the Court of Quarter Sessions to make an order based on the non-support and desertion charge is not ousted.

The case of Com. v. Edgar, 44 Pa. Superior Ct. 496, cited by the respondent, does not relate to the question now before us.

19 Corpus Juris, § 468, page 190: "Unless under the statutes of the particular jurisdiction a different rule is required, an appeal from a decree (in divorce) ordinarily suspends the operation of the decree upon the rights of an appellant, although no *supersedeas* bond is executed, and under the practice in some jurisdictions the lower court retains jurisdiction to the extent of considering an application for the payment of alimony and the expenses of the wife pending a determination of the appeal."

The case at bar is not a case where the Court of Common Pleas is attempting to exercise any jurisdiction on the subject-matter of a case after the case has been appealed to a higher tribunal. The jurisdiction which the respondent is endeavoring to attack is not that of the Court of Common Pleas which granted the divorce, but the Court of Quarter Sessions, which ordered him, before he was divorced, to pay his wife a certain sum of money for her support in order to prevent her becoming a public charge.

## Conclusion.

The contention of Kissinger's counsel is that their client is now, in spite of the appeal, as absolutely divorced from Mrs. Kissinger as though he and she had never been married. Yet it must be conceded that if Mrs. Kissinger's appeal is successful, they will still be husband and wife without further ceremony. By this contention Kissinger's counsel put their client in a category where, matrimonally speaking, he, like "Tomlinson," is "neither spirit nor spirk."

We think the correct view of the situation is that the Common Pleas judgment of divorce is suspended. As in a criminal case, when an appeal operating as a *supersedeas* is taken, the judgment of the court below cannot be carried out, and the legal rights of the parties affected remain practically as they were before judgment was rendered.

While we do not have interlocutory decrees in divorce in Pennsylvania, we think the status of a couple under a divorce decree appealed from is analogous with what it would be under an interlocutory decree.

19 Corpus Juris, § 457, page 185: "While an interlocutory decree does not dissolve the marriage, . . . it is a judicial determination that the wife is not thereafter cohabiting with her husband; *and when it is not appealed from and becomes final,* an interlocutory decree as to the property rights adjudicated, as well as with respect to the adjudicated right to divorce, has the same effect as an absolute decree."

Commonwealth *v.* Kissinger.

Since the judgment of the Court of Common Pleas in this case was appealed from, it is now suspended and inoperative, and since it is inoperative, Raymond Kissinger must still assume toward Ina Kissinger the obligations that were his before the judgment was rendered; that is, he must assume a husband's obligations for a wife's support, and the order of the Court of Quarter Sessions directing the said Raymond Kissinger to pay his wife $75 a month is still in effect.

*Order.*

Now, to wit, June 1, 1923, it is ordered that the said Raymond Kissinger continue payments under the order made by this court on Dec. 23, 1922, and furnish security for compliance therewith, and in default thereof to be committed.

From William A. Wilcox, Scranton, Pa.